Joshua Konecky, SBN 182897
jkonecky@schneiderwallace.com
Nathan Piller, SBN 300569
npiller@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone:  (415) 421-7100
Facsimile:  (415) 421-7105

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SARAH REYNOSA-JUAREZ, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ACCOUNTABLE HEALTHCARE STAFFING, INC., and ACCOUNTABLE HEALTHCARE HOLDINGS CORP, <br><br> Defendants. | **CLASS AND COLLECTIVE ACTION COMPLAINT:** <br><br> **(1) FAIR LABOR STANDARDS ACT;** <br><br> **(2) CALIFORNIA LABOR CODE;** <br><br> **(3) CALIFORNIA INDUSTRIAL WELFARE COMMISSION WAGE ORDERS; and** <br><br> **(4) CALIFORNIA BUSINESS AND PROFESSIONS CODE §§17200, *et seq.*** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Sarah Reynosa-Juarez, by and through her undersigned attorneys, hereby brings this Class and Collective Action Complaint against Defendants Accountable Healthcare Staffing, Inc. and Accountable Healthcare Holdings Corp. (collectively, "Defendants" or "Accountable") and alleges as follows:

---

CLASS AND COLLECTIVE ACTION COMPLAINT
*Reynosa-Juarez, et al. v. Accountable Healthcare Staffing, Inc., et al.*

## I.     NATURE OF THE CASE

1.     This is a class and collective action arising out of Defendants' failure to pay their traveling nurses at statutorily-mandated premium rates for overtime, as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the California Labor Code; and failure to provide meal periods and authorize and permit rest periods that are truly off-duty and otherwise in compliance with the applicable Wage Order and California law.

2.     Accountable employs thousands of traveling nurses across the United States and hundreds in California.  Traveling nurses travel throughout the country working at the various hospitals and health systems with which Accountable contracts.  They typically work at a location for approximately 3 months before Accountable assigns them to a new location.  Plaintiff Reynosa-Juarez worked for Accountable at Kaiser Permanente's San Jose Medical Center from approximately December 1, 2015 through February 27, 2016.

3.     Section 510 of the Labor Code provides: "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of <u>no less than one and one-half times the regular rate of pay</u> for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of <u>no less than twice the regular rate of pay for an employee</u>." Cal. Lab. Code § 510(a).

4.     The FLSA provides that employers must pay their employees at a rate of <u>not less than one and one-half times the regular rate at which they are employed</u>, for all hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(2).

5.     Accountable's common travel nursing contracts provide: "To be paid to you as overtime, any overtime worked must be approved before the shift is worked, in writing, by someone of authority at the facility. **<u>Unapproved overtime will be paid to you as regular time</u>**."

6.     On its face, Accountable's policy of paying overtime hours at a non-overtime rate of pay is a violation of the FLSA and California overtime law. Contending that overtime has not been

properly "approved" is not an excuse for failing to pay overtime premiums for overtime work that the employer knows or has reason to know has occurred.  This is not only a basic tenet of overtime law, but also critical in the nursing field, where it often can be difficult, unduly burdensome and impractical to obtain formal, written "approval" before working the overtime that nurses regularly need to work to fulfill their patient care obligations.

7.     Employers are obligated to pay for overtime that they know or should know is being worked, regardless of whether it has been "approved" by a client of the employer.  Indeed, "an employer who <u>knows or should have known</u> that an employee is or was working overtime must comply with the [overtime laws]." *Forrester v. Roth's I.G.A. Foodliner, Inc.* (9th Cir. 1981) 646 F.2d 413, 414 (emphasis added; citations omitted).  "The basis of liability is the defendant's knowledge of and <u>failure to prevent</u> the work from occurring." *Martinez v. Combs*, 49 Cal.4th 35, 70 (2010) (emphasis added).  Here, Accountable has actual knowledge that its traveling nurses are workings overtime, because its policy is to *pay* them for the overtime hours they have reported (but just not at the statutorily-mandated premium rate).  Rather than actually preventing work it does not want to pay for, it has accepted the benefits of the work and paid for it at a cut rate.  The traveling nurses are owed compensation for any overtime hours they have reported, but that where paid by Accountable at the regular rate, rather than the statutorily-mandated premium rate.

8.     Traveling nurses working for Accountable—such as Plaintiff Reynosa-Juarez—are typically scheduled to work three 12-hour shifts per week, but often work more than three shifts per week.  However, Accountable has routinely required and/or suffered and permitted Ms. Reynosa-Juarez and the other traveling nurses to work well in excess of 12 hours per day without paying them at the statutorily-mandated double time rate for hours in excess of 12 per day, and well in excess of 40 hours per week without paying them at the statutorily mandated overtime premium rate for hours in excess of 40 per week.

9.     Unpaid work before and after the scheduled shift is an everyday reality for Accountable's traveling nurses, including Ms. Reynosa-Juarez.

10. First, the traveling nurses, including Ms. Reynosa-Juarez, are assigned such a heavy workload (taking patient pulses, samples, temperatures, and blood pressures; writing records; filling out patient charts; providing pre- and post-operation care; monitoring and administering medication and intravenous infusions; "handing-off" patients to the next shift of nurses; performing physical exams and health histories; providing wound care; providing healthcare counseling and education to patients; and directing other healthcare personnel, among other duties) that it is routinely impossible to complete within the scheduled shift.

11. Second, many tasks have to be completed at the end of the scheduled shift, such as handing off patients to the incoming shift. These tasks routinely cannot be completed before the shift is scheduled to end. The result is that traveling nurses, including Ms. Reynosa-Juarez, are routinely staying late to complete their duties, such as patient "handoffs" and any patient charting or other tasks that remain unfinished by the time the scheduled shift is over.

12. Although it only pays premiums for overtime that is "approved" before the shift, Accountable has not established any practical or reliable procedure for obtaining approval <u>before</u> the shift.

13. Requiring pre-approval is impractical in the hospital setting because nurses are under a professional duty and regulatory obligation to complete any outstanding patient care duties that were not completed during the scheduled shift, before they leave. A pre-approval requirement to be paid for completing tasks the nurses already are obligated to perform as a matter of professional and regulatory obligation is nothing but a pretext for discouraging traveling nurses from seeking approval and claiming overtime pay in the first place. Nurses are subject to losing their livelihoods and licenses if they fail to complete these tasks. Accountable knows that traveling nurses must finish their duties, whether or not they receive the pre-approval, and yet it imposes this contrived preapproval requirement to suppress their wages.

14. Even if traveling nurses were able to predict that they will need to work overtime before the shift even begins, the procedure for obtaining approval is burdensome and unreliable.

Accountable's common contracts provide that "any overtime worked must be approved before the shift is worked, in writing, by someone of authority at the facility." As a result, the traveling nurses must ask supervisors to sign off on their timecards for time worked in excess of 12 hours in a workday, before the shift begins. However, the persons "of authority," such as house managers, charge nurses, and scheduling personnel, have often completed their shifts or have not yet arrived for their shifts at the time a traveling nurse must seek approval for overtime. Even when requests for approval are made, they are systematically ignored or denied by the hospital supervisors who are available.

15. Accountable also imposes a variety of obstacles that prevent traveling nurses—including Ms. Reynosa-Juarez—from receiving compliant meal and rest periods, during which they are completely removed from duty. First, the traveling nurses are barred from leaving a patient unattended. Thus, they must be relieved by another nurse before going on break. To be sure, a policy against patient abandonment in the healthcare setting is sensible. However, Accountable and its client hospitals have not implemented reliable break relief procedures to provide meal and rest periods to the traveling nurses at regular intervals, to ensure that traveling nurses do not have to work through their breaks to prevent patient abandonment.

16. Accountable leaves it to the client hospitals to design a break relief system, but the clients do not take responsibility for ensuring that the traveling nurses actually receive breaks. As a result, the traveling nurses are routinely not relieved and thus unable to leave their patients, leaving them tethered to the bedside when they are entitled to meal periods and rest breaks.

17. Even when they do receive some kind of "break," neither the client hospitals, nor Accountable implements a system that completely removes traveling nurses from the duty to respond to patient issues and questions and other contacts from health care professionals, among other interruptions that arise during breaks. Instead, nurses must stay at the ready and available to be interrupted during their breaks.

18.     Plaintiff, Sarah Reynosa-Juarez, worked as traveling nurse for Defendants from approximately December 2015 to March 2016.  She brings Cause of Action One (the "FLSA Claim") as a collective action on behalf of herself and other similarly situated individuals who have worked as traveling nurses for Defendants in the United States, at any time beginning three years before the filing of this complaint. Plaintiff brings Causes of Action Two through Eight (the "California Class Claims") as a class action on behalf of herself and other similarly situated individuals who have worked as traveling nurses for Defendants in California, at any time beginning four years before the filing of this Complaint, through the resolution of this action.

19.     Plaintiff's FLSA Claim is brought under the FLSA, 29 U.S.C. §§ 201, et seq., and stems from Defendants' failure to compensate their traveling nurses at their statutorily mandated overtime premium rate for hours worked in excess of 40 per week.

20.     Plaintiff's California Class Claims are brought under the California wage and hour laws, and stem from Defendants' failure to compensate their traveling nurses at their statutorily mandated double-time rate for hours worked in excess of 12 in a day, and for failing to provide meal periods and to authorize and permit rest periods that are truly off duty and otherwise in compliance with the requirements of the applicable Wage Order.

21.     Plaintiff, on her own behalf and on behalf of all Class Members, brings the California Class Claims pursuant to California Labor Code §§ 201, 202, 203, 221-223, 226, 226.7, 510, 512 1174, 1194, and 1198; and California Code of Regulations, Title 8 §11050 §§ 7 & 11-12 (Wage Order No. 5), and under Business & Professions Code §§ 17200-17208, for unfair competition due to Defendants' unlawful, unfair and fraudulent business acts and practices.  Plaintiff challenges Defendants' policies of: (1) denying Plaintiff and the Class their overtime and double time wages despite requiring and/or suffering and permitting them to work in excess of 12 hours per day; (2) failing to provide Plaintiffs with meal periods in compliance with the requirements of the applicable Wage Order; (3) failing to authorize and permit Plaintiffs rest periods in compliance with the requirements of the applicable Wage Order; (4) failing to provide Plaintiff and the Class with

accurate, itemized wage statements; (5) failing to maintain accurate payroll records; and (6) failing to timely pay Plaintiff and the Class full wages upon termination or resignation. Plaintiff, on behalf of herself and all others similarly situated, seeks declaratory and injunctive relief, including restitution under Bus. & Prof. Code §17203. Plaintiff, on behalf of herself and all others similarly situated, also seeks compensation, damages, penalties, interest, and attorneys' fees and costs to the full extent permitted by applicable law.

## II. JURISDICTION AND VENUE

22. The FLSA authorizes private rights of action to recover damages for violation of the FLSA's wage and hour provisions. 29 U.S.C. § 216(b). This Court has original federal question jurisdiction under 28 § U.S.C. § 1331.

23. This Court has supplemental jurisdiction over the California state law claims because they are so related to this action that they form part of the same case or controversy under Article III of the United States Constitution.

24. Additionally, jurisdiction over Plaintiff's state law claims is based upon the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), because the aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed California Class, on the one hand, and Accountable, on the other, are citizens of different states.

25. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants have offices, conduct business and can be found in the District, and the causes of action set forth herein have arisen and occurred in part in the District. Venue is further proper under 29 U.S.C. § 1132(e)(2) because Defendants have substantial business contacts within the state of California and in this District.

### III.    PARTIES

26.    Plaintiff, Sarah Reynosa-Juarez, is a resident of Mather, California.  Plaintiff worked as a traveling nurse for Defendants in San Jose, California, from approximately December 2015 to March 2016.

27.    Defendants employed Ms. Reynosa-Juarez as a traveling nurse and Ms. Reynosa-Juarez held this same job position since she began working for Defendants in December of 2015.

28.    Defendant Accountable Healthcare Staffing, Inc. is and at relevant times has been engaged in the business of health care staffing in the State of California. Defendant Accountable Healthcare Staffing, Inc. has places of business at various locations in California, including in this District. Defendant Accountable Healthcare Staffing, Inc. is headquartered in Boca Raton, Florida.

29.    Defendant Accountable Healthcare Holdings Corp. is and at all relevant times has been engaged in the business of health care staffing in the state of California.  Defendant Accountable Healthcare Holdings Corp. has places of business at various locations in California.

### IV.    FACTUAL ALLEGATIONS

30.    During the relevant time period of this action, Defendants have employed Plaintiff and other similarly situated individuals to provide nursing services.  Their job duties have included administering tests, checking health indicators such as vital signs, creating a record regarding a patient's overall health picture ("charting"), assisting patients in recovery and prevention, providing medication, administering intravenous infusions, providing wound care, providing pre- and post-operation care, moving and assisting patients with ambulation, performing other treatment duties, and performing administrative duties at the direction of Defendants.

31.    Accountable contracts with several hospitals throughout California to provide nurse staffing services by employing and compensating traveling nurses and assigning them to work at one of the several hospitals with which it contracts.

32.    Section 510 of the Labor Code provides: "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked

on the seventh day of work in any one workweek shall be compensated at the rate of <u>no less than one and one-half times the regular rate of pay</u> for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of <u>no less than twice the regular rate of pay for an employee</u>." Cal. Lab. Code § 510(a).

33.     The FLSA provides that employers must pay their employees at a rate of not less than one and one-half times the regular rate at which they are employed, for all hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(2).

34.     Accountable's common travel nursing contracts provide: "To be paid to you as overtime, any overtime worked must be approved before the shift is worked, in writing, by someone of authority at the facility. **Unapproved overtime will be paid to you as regular time**."

35.     On its face, Accountable's policy of not paying statutorily-mandated overtime premiums and paying overtime hours worked at the regular rate is nothing short of systematic wage theft.

36.     Employers are obligated to pay for overtime that they know or should know is being worked, regardless of whether it has been "approved" by a client of the employer.  Indeed, "an employer who <u>knows or should have known</u> that an employee is or was working overtime must comply with the [overtime laws]." *Forrester v. Roth's I.G.A. Foodliner, Inc.* (9th Cir. 1981) 646 F.2d 413, 414 (emphasis added; citations omitted) (interpreting analogous FLSA).  "The basis of liability is the defendant's knowledge of and <u>failure to prevent</u> the work from occurring." *Martinez v. Combs*, 49 Cal.4th 35, 70 (2010) (emphasis added).  Here, Accountable has actual knowledge that its traveling nurses are workings overtime, because its policy is to *pay* them for the overtime hours they have reported (but just not at the statutorily-mandated premium rate).  Rather than actually preventing work it does not want to pay for, it has accepted the benefits of the work and paid for it at a cut rate.  The traveling nurses are owed compensation for any overtime hours they have reported, but that where paid by Accountable at the regular rate rather than the statutorily-mandated premium rate.

37.   Traveling nurses working for Accountable—such as Plaintiff Reynosa-Juarez—are typically scheduled to work three 12-hour shifts per week, but often work more than three. However, Accountable has routinely required and/or suffered and permitted Ms. Reynosa-Juarez and the other traveling nurses to work well in excess of 12 hours per day without paying them at the statutorily-mandated double time rate for hours in excess of 12 per day, and well in excess of 40 hours per week without paying them at the statutorily-mandated overtime premium rate for hours in excess of 40 per week.

38.   Unpaid work before and after the scheduled shift is an everyday reality for Accountable's traveling nurses, including Ms. Reynosa-Juarez.

39.   First, the traveling nurses, including Ms. Reynosa-Juarez, are assigned such a heavy workload (charting; providing pre- and post-operation care; taking patient pulses, samples, temperatures, and blood pressures; monitoring and administering medication and intravenous infusions; "handing-off" patients to the next shift of nurses; performing physical exams and health histories; providing wound care; providing healthcare counseling and education to patients; and directing other healthcare personnel, among other duties) that it is routinely impossible to complete within the scheduled shift.

40.   Second, many tasks have to be completed at the end of the scheduled shift, and routinely cannot be completed without working past the scheduled shift.  The result is that traveling nurses, including Ms. Reynosa-Juarez, are routinely staying late to complete their duties, such as patient "handoffs" and any patient charting or other tasks that remain unfinished by the time the scheduled shift is over.

41.   Although it only pays premiums for overtime that is "approved" before the shift, Accountable has not established any practical or reliable procedure for obtaining approval before the shift.

42.   Requiring pre-approval is impractical in the hospital setting because nurses are under a professional duty and regulatory obligation to complete various tasks at the end of the scheduled

shift, such as patient handoffs and charting.  A pre-approval requirement to be paid for completing tasks the nurses already are obligated to perform as a matter of professional and regulatory obligation is nothing but a pretext for discouraging traveling nurses from seeking approval and claiming overtime pay in the first place.  Nurses are subject to losing their licenses and livelihoods if they fail to complete these tasks.  Accountable knows that traveling nurses must finish their duties, whether or not they receive the pre-approval, and yet it imposes this contrived preapproval requirement to suppress their wages.

43.     Even if traveling nurses were able to predict that they will need to work overtime before the shift even begins, the procedure for obtaining approval is unreliable. Accountable's common contracts provide that "any overtime worked must be approved before the shift is worked, in writing, by someone of authority at the facility." As a result, the traveling nurses must ask supervisors to sign off on their timecards for time worked in excess of 12 hours in a workday, before the shift begins.  However, the persons "of authority," such as house managers, charge nurses, and scheduling personnel, have often completed their shifts or have not yet arrived for their shifts at the time a traveling nurse must seek approval for overtime.  Even when requests for approval are made, they are systematically ignored or denied by the hospital supervisors who are available.

44.     Accordingly, Plaintiff and those similarly situated have been denied the straight time and double time wages they are owed under California law, and the overtime wages they are owed under the FLSA.

45.     Accountable also imposes a variety of obstacles that prevent traveling nurses—including Ms. Reynosa-Juarez—from receiving compliant meal and rest periods, during which they are completely removed from duty.  First, the traveling nurses are barred from leaving a patient unless they are relieved by another nurse.  To be sure, a policy against patient abandonment in the healthcare setting is sensible.  However, Accountable and its client hospitals have not implemented reliable break relief procedures to provide meal and rest periods to the traveling nurses at regular

intervals, to ensure that traveling nurses do not have to work through their breaks to avoid patient abandonment.

46.     Accountable leaves it to the client hospitals to design a break relief system, but the clients do not take responsibility for ensuring that the traveling nurses actually receive breaks.  As a result, the traveling nurses are routinely not relieved and thus unable to leave their patients, leaving them tethered to the bedside when they are entitled to meal periods and rest breaks.

47.     Even if they do receive some kind of "break," neither Accountable nor the client hospitals has implemented a system that completely removes traveling nurses from the duty to respond to patient issues and questions and other contacts from health care professionals, among other interruptions that arise during breaks. Instead, nurses must stay at the ready and available to be interrupted during their breaks.

48.     As a result, the traveling nurses, including Ms. Reynosa-Juarez, routinely are not provided with uninterrupted, thirty-minute meal periods during which they are completely relieved of any duty, by the end of the fifth hour of work and the end of the tenth hour of work, and are routinely not authorized and permitted to take rest breaks of at least ten minutes by the end of every fourth hour of work or major fraction thereof.

## V.     COLLECTIVE AND CLASS ACTION ALLEGATIONS

49.     Plaintiffs brings the First Count (the FLSA claim) as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and a proposed collection of similarly situated employees defined as:

> "All individuals who are currently employed, or formerly have been employed as a traveling nurse or in a like hourly position for Accountable Healthcare Staffing, Inc. and/or Accountable Healthcare Holdings Corp. in the United States at any time beginning three years before the filing of this Complaint." (the "FLSA Collective")

50.     Plaintiff, individually, and on behalf of other similarly situated employees defined above, seek relief on a collective basis challenging Accountable's policy and practice of failing to properly pay traveling nurses overtime at the statutorily-mandated premium rate.  The number and

identity of other similarly situated persons yet to opt-in and consent to be party-plaintiffs may be determined from the records of Accountable, and potential opt-ins may be easily and quickly notified of the pendency of this action.

51.     Plaintiff Reynosa-Juarez has consented to be a party plaintiff by executing a "consent to join" form, which Plaintiff is filing concurrently with this Complaint. The executed form is attached hereto as Exhibit A.

52.     Plaintiff brings the Second through Eighth Counts (the California state law claim) as an "opt-out" class action pursuant to Federal Rule of Civil Procedure 23.   The California Class is initially defined as:

> "All individuals who are currently employed, or formerly have been employed as a traveling nurse or in a like hourly position for Accountable Healthcare Staffing, Inc. and/or Accountable Healthcare Holdings Corp. in California at any time dating from four years before the filing of this Complaint." (the "California Class")

53.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23:

   (a)   *Numerosity*.  Defendants have employed hundreds of traveling nurses in California from 2014 through the present.  Class members are therefore far too numerous to be individually joined in this lawsuit.

   (b)   *Existence and Predominance of Questions of Law and/or Fact*.  Common questions of law and/or fact exist as to the members of the California Class and, in addition, common questions of law and/or fact predominate over questions affecting only individual members of the California Class.  The common questions include the following:

       i.   Whether Defendants required and/or suffered and permitted Plaintiff and the other traveling nurses to work in excess of 12 hours per day;

       ii.   If so, whether Defendants have refused to certify and approve payment of double-time wages for hours worked in excess of 12 hours per day;

iii. Whether Defendants required and/or suffered and permitted Plaintiff and the other traveling nurses to work in excess of 40 hours per week;

iv. If so, whether Defendants have refused to certify and approve payment of overtime wages for hours worked in excess of 40 hours per week;

v. Whether Defendants have failed to compensate Plaintiff and the other traveling nurses at the statutorily mandated double-time rate for hours worked in excess of 12 in a day;

vi. Whether Defendants have failed to compensate Plaintiff and the other traveling nurses at the statutorily mandated overtime premium rate for hours worked in excess of 40 in a week;

vii. Whether Defendants failed to keep accurate records of hours worked and wages earned by traveling nurses;

viii. Whether Defendants' failure to compensate Plaintiff and the other traveling nurses at a double-time rate for hours worked in excess of 12 per day and at an overtime premium rate for hours worked in excess of 40 in a week has been willful, intentional or reckless;

ix. Whether Defendants failed to provide traveling nurses with uninterrupted meal periods of 30 minutes during which they were completely relieved of duty, by the end of the fifth hour of work and again by the end of the tenth hour of work;

x. Whether Defendants failed to authorize and permit the traveling nurses with rest breaks of at least 10 minutes by the end of every fourth hour of work or major fraction thereof;

xi. Whether the paychecks provided to the traveling nurses in connection with their compensation contain all the elements mandated for accurate itemized wage statements under Cal. Labor Code § 226(a);

CLASS AND COLLECTIVE ACTION COMPLAINT
*Reynosa-Juarez, et al. v. Accountable Healthcare Staffing, Inc., et al.*

xii.   Whether traveling nurses who had their employment relationship with Defendants terminated are entitled to penalty wages for Defendants' failure to timely pay all outstanding amounts of compensation owed upon termination of the employment relationship;

xiii.   Whether Defendants' policies and practices have resulted in violation of one or more of the Labor Code Provisions cited herein;

xiv.   Whether Defendants' policies and practices are unlawful, unfair and/or fraudulent business practices in violation of California Business & Professions Code §§17200, *et seq.*; and

xv.   The injunctive and/or monetary relief to which Plaintiff and the California Class may be entitled as a result of the violations alleged herein.

(c)   *Typicality*.  Plaintiff's claims are typical of the claims of the California Class. Defendants' common course of conduct in failing to approve and compensate traveling nurses at the statutorily mandated double time rate for hours in excess of 12 per day that they require and/or suffer and permit them to perform, failing to provide traveling nurses with uninterrupted meal periods of 30 minutes during which they were completely relieved of duty, by the end of the fifth hour of work and again by the end of the tenth hour of work, and failing to authorize and permit the traveling nurses rest breaks of at least 10 minutes by the end of every fourth hour of work or major fraction thereof, has caused Plaintiff and the proposed California Class to sustain the same or similar injuries and damages.  Plaintiff's claims are thereby representative of and co-extensive with the claims of the proposed California Class.

(d)   *Adequacy*. Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of the members of the class she seeks to represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action

vigorously.  Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

(e) *Superiority*.  The class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible.  Furthermore, individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court, and avoids the problem of inconsistent judgments.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violations of the Fair Labor Standards Act**
**(By the FLSA Collective and Against All Defendants)**

54.    Plaintiff, on behalf of herself and all others similarly situated, realleges as if fully set forth, each and every allegation set forth herein.

55.    At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

56.    The FLSA requires, among other things, that employers whose employees are engaged in interstate commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce pay employees at a rate of not less than one and one-half times the regular rate at which they are employed, for all hours worked in excess of 40 hours per week.  29 U.S.C. § 207(a)(2).  Defendants are subject to the requirements of the FLSA because they are engaged in interstate commerce and their employees are engaged in commerce.

57.     Defendants violated the FLSA by failing to pay their traveling nurses at a rate of one and one-half times the regular rate at which they are employed, for all hours worked in excess of 40 hours per week.  29 U.S.C. § 207(a)(2).  Defendants have also violated the FLSA by failing to keep required, accurate records of all hours worked by its traveling nurses.  29 U.S.C. § 211(c).

58.     Plaintiff and all similarly situated employees are victims of a uniform and company-wide compensation policy.  This uniform policy, in violation of the FLSA, has been applied to all traveling nurses employed by Defendants throughout California and the United States.

59.     Plaintiff and all similarly situated employees are entitled to damages equal to the mandated pay and overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew or showed reckless disregard of whether their conduct was prohibited by the FLSA.

60.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay, and/or prejudgment interest at the applicable rate.  29 U.S.C. 216(b).

61.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. section 255(a).

62.     As a result of the aforesaid violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.  Accordingly, Defendants are liable for unpaid wages, together with an amount equal as liquidated damages, attorneys' fees and costs of this action.

### SECOND CAUSE OF ACTION
**Failure to Pay Overtime Compensation**
**California Labor Code §§ 510, 515.5, 1194, and 1198 *et seq.*, and IWC Wage Order No.5**
**(By the California Class and Against All Defendants)**

63.     Plaintiff hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

CLASS AND COLLECTIVE ACTION COMPLAINT
*Reynosa-Juarez, et al. v. Accountable Healthcare Staffing, Inc., et al.*

64.     California Labor Code §§ 510 and 1198, and IWC Wage Order No. 5, §3, provides that employees in California shall not be employed more than eight (8) hours in any workday or forty (40) hours in any workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

65.     Defendants have failed to pay Plaintiff, and other members of the California Class, compensation at statutorily-mandated premium rates for the hours they worked in excess of the maximum hours permissible by law under California Labor Code §§ 510 and 1198, and IWC Wage Order No. 5, §3.  Defendants require and/or suffer and permit Plaintiff and other members of the California Class to work hours in excess of 8 in a day and 12 in a day.

66.     Defendants' failure to pay additional, premium rate compensation to Plaintiff and members of the California Class for their overtime and double time hours worked has caused Plaintiff and California Class Members, and continues to cause many California Class Members to suffer damages in amounts which are presently unknown to them but which exceed the jurisdictional threshold of this Court and which will be ascertained according to proof at trial.

67.     Pursuant to Labor Code §218.6 or Civil Code §3287(a), Plaintiff and other members of the California Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

68.     As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiff and California Class Members have been deprived of overtime and double time compensation in an amount to be determined at trial.  Plaintiffs and other members of the California Class request recovery of overtime and double time compensation according to proof, interest, attorney's fees and costs of suit pursuant to California Labor Code §§1194(a), 554, 1194.3 and 1197.1, as well as the assessment of any statutory penalties against Defendants, in a sum as provided by the California Labor Code and/or other statutes.

//

**THIRD CAUSE OF ACTION**
**Failure to Provide Meal Periods, or Compensation in Lieu Thereof**
**California Labor Code §§ 226.7 and 512; and Cal. Code Regs., Title 8 §11050 ¶¶ 7 & 11**
**(By the California Class and Against All Defendants)**

69.     Plaintiff hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

70.     California Labor Code §§ 226.7 and 512, and Title 8 of the California Code of Regulations § 11050, ¶ 11 require Defendants to provide meal periods to Plaintiffs and members of the proposed Class.  California Labor Code §§ 226.7 and 512, and Title 8 of the California Code of Regulations § 11050, § 11 prohibit employers from employing an employee for more than five hours without a meal period no less than  thirty (30) minutes and for more than ten (10) hours without a second meal period.  Unless the employee is relieved of all duty during the thirty (30) minute meal period, the employee is considered "on-duty" and the meal or rest period is counted as time worked.

71.     Defendants do not provide Plaintiff and the traveling nurses with meal periods during which they are completely relieved of duty for at least thirty (30) minutes by the fifth hour of work and again by the tenth hour of work.

72.     Rather, the traveling nurses regularly work twelve (12) hours in a day, and often far more, without the opportunity to take a meal period during which they are relieved of all duty.

73.     Defendants' policy has been to require the traveling nurses to skip statutorily-mandated meal periods whenever a traveling nurse's assigned patient needs treatment or monitoring, rather than to maintain a system whereby other nurses relieve them at regular intervals throughout the day.  Even when the traveling nurses are provided with meal periods, they are subject to interruption to respond to patient treatment needs.

74.     Defendants have failed to perform their obligations to provide Plaintiffs and California Class Members off-duty meal periods by the end of the fifth hour of work and a second meal period by the end of the tenth hour of work.  Defendants also have failed to pay Plaintiff and California Class Members one (1) hour of pay for each off-duty meal period that they have been denied. Defendants' conduct described herein violates California Labor Code §§226.7 and 512 and Title 8 of

the California Code of Regulations §11090.  Therefore, Plaintiff and members of the putative

California Class are entitled to compensation for Defendants' failure to provide meal periods, plus

interest, expenses, and costs of suit pursuant to California Labor Code §§226.7(b) and Title 8 of the

California Code of Regulations §11050.

**FOURTH CAUSE OF ACTION**
**Failure to Provide Rest Periods, or Compensation in Lieu Thereof**
**California Labor Code §§ 226.7 and Cal. Code Regs., Title 8 § 11050 ¶ 12**
**(By the California Class and Against All Defendants)**

75.    Plaintiff hereby realleges and incorporate by reference the paragraphs above as though

fully set forth herein.

76.    California Labor Code §226.7 and Title 8 of the California Code of Regulations §

11050, ¶ 12 requires Defendants to authorize and permit rest periods to Plaintiff and members of the

proposed California Class at the rate of ten minutes net rest time per four hours or major fraction

thereof.

77.    Defendants simply do nothing to authorize or permit such rest periods, even if there

were an opportunity to take them.

78.    To the contrary, the traveling nurses regularly work twelve (12) hours in a day, and

often far more, without any realistic opportunity to rest for even ten minutes during a four hour

period or major fraction thereof.

79.    Defendants' policy has been to require the traveling nurses to skip statutorily-

mandated rest breaks whenever a traveling nurse's assigned patient needs treatment or monitoring,

rather than to maintain a system whereby other nurses relieve them at regular intervals throughout

the day.  As a result, the traveling nurses routinely are not authorized and permitted to take rest

breaks of at least ten minutes by the end of every fourth hour of work or major fraction thereof.

80.    Under both California Labor Code § 226.7 and Title 8 of the California Code of

Regulations §1150, ¶ 12, an employer must pay an employee who was denied a required rest period

one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period was not provided.

81.     At all relevant times herein, Defendants have failed to perform their obligations to authorize and permit Plaintiffs and California Class Members to take rest periods as set forth above. Defendants also failed to pay Plaintiffs and Class Members one (1) hour of pay for each rest period they have been denied.  Defendants' conduct described herein violates California Labor Code §§ 226.7 and Title 8 of the California Code of Regulations §11050.  Therefore, Plaintiffs and members of the putative California Class are entitled to compensation for Defendants' failure to authorize and permit rest periods, plus interest, and costs of suit pursuant to California Labor Code §§ 226.7(b), and Title 8 of the California Code of Regulations § 11050.

**FIFTH CAUSE OF ACTION**
**Failure to Keep Accurate Payroll Records**
**California Labor Code §§ 1174 & 1174.5**
**(By the California Class and Against All Defendants)**

82.     Plaintiff hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

83.     California Labor Code §1174 requires Defendants to maintain payroll records showing, among other things, the actual hours worked daily by its employees, wages paid to its employees, the number of piece-rate units earned by its employees, and any applicable piece rate paid to its employees.

84.     California Labor Code §1174.5 provides that employers who willfully fail to maintain accurate payroll records shall be subject to civil penalties.

85.     Defendants knowingly, intentionally, and willfully have failed to maintain payroll records showing the actual hours worked by, and accurate hourly rate paid to Plaintiff and California Class members as required by California Labor Code §1174 and in violation of §1174.5.  As a direct result of Defendants' failure to maintain payroll records, Plaintiff and California Class members have suffered actual economic harm as they have been precluded from accurately monitoring the number of hours they work, and thus seeking all wages owed in the form of overtime and double

time compensation. As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiff and the California Class members are entitled to recover damages and civil penalties in an amount to be determined at trial, plus interest, attorneys' fees, and costs of suit.

86.     Pursuant to Labor Code §218.6 and/or Civil Code §3287(a), Plaintiff and other members of the California Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

87.     Plaintiff, on behalf of herself and all others similarly situated, seeks all unpaid compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under applicable law set forth below.

### SIXTH CAUSE OF ACTION
**Failure to Furnish Accurate Wage Statements**
**California Labor Code § 226**
**(By the California Class and Against All Defendants)**

88.     Plaintiff hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

89.     California Labor Code §226(a) provides that every employer must furnish each employee with an accurate itemized wage statement, in writing, showing nine pieces of information, including: 1) gross wages earned; 2) total hours worked by the employee; 3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece rate basis; 4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item; 5) net wages earned; 6) the inclusive dates of the period for which the employee is paid; 7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number; 8) the name and address of the legal entity that is the employer; and 9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

90.     California Labor Code §226(e) provides that an employee suffering an injury as a result of a knowing and intentional failure to provide a statement accurately itemizing the information set forth in Labor Code §226(a), then the employee is entitled to recover the greater of

all actual damages or fifty-dollars ($50.00) for the initial violation and one-hundred dollars ($100.00) for each subsequent violation, up to a maximum of four-thousand dollars ($4,000.00).

91.     Defendants intentionally and willfully failed to furnish Plaintiff and California Class members with timely, accurate, itemized statements showing total hours worked, gross wages earned, net wages earned, and the applicable hourly rates as required by California Labor Code §226(a).

92.     Plaintiff and the California Class members have been injured by Defendants' violation of California Labor Code §226(a) because they have been denied their legal right to receive and their protected interest in receiving, accurate, itemized wage statements, and could not promptly and easily ascertain from the wage statement alone their total hours worked, gross wages earned, net wages earned, and the applicable hourly rates, among other required information.

93.     Plaintiff and California Class Members have also been injured as a result of having to bring this action to obtain correct wage information following Defendants' refusal to comply with many requirements of the California Labor Code.  As a result, Defendants are liable to Plaintiff and California Class members, for the amounts, penalties, attorneys' fees, and costs of suit provided by California Labor Code §226(e).

94.     Pursuant to Labor Code §218.6 and/or Civil Code §3287(a), Plaintiff and other members of the California Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

95.     Plaintiff, on behalf of herself and the proposed California Class, requests an assessment of penalties as stated herein and other relief as described below.

96.     Plaintiff, on behalf of herself and all others similarly situated, seeks all unpaid compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under applicable law set forth below.

//

//

### SEVENTH CAUSE OF ACTION
#### Waiting Time Penalties
#### California Labor Code §§ 201-203
#### (By the California Class and Against All Defendants)

97.     Plaintiff hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

98.     California Labor Code §201 requires an employer who discharges an employee to pay all compensation due and owing to said employee immediately upon discharge.  California Labor Code §202 requires an employer to promptly pay compensation due and owing to said employee within seventy-two (72) hours of that employee's termination of employment by resignation. California Labor Code §203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under California Labor Code §§201-202, then the employer is liable for waiting time penalties in the form of continued compensation for up to thirty (30) work days.

99.     Plaintiff and members of the California Class have left their employment with Defendants during the statutory period.  Defendants willfully failed and refused, and continue to willfully fail and refuse, to timely pay all wages owed to Plaintiff and to all other proposed California Class members whose employment with Defendants has ended or been terminated at any point during the statutory period.  As a result, Defendants are liable to Plaintiff and other formerly employed members of the proposed California Class for waiting time penalties, together with interest thereon, attorneys' fees, and costs of suit, under California Labor Code §203.

100.    Plaintiff, on behalf of herself and the proposed Class, requests waiting time penalties pursuant to California Labor Code §203, plus attorneys' fees and costs, as described below.

### EIGHTH CAUSE OF ACTION
#### Unfair Competition and Unlawful Business Practices
#### California Business and Professions Code §§ 17200, *et seq.*
#### (By the California Class and Against All Defendants)

101.    Plaintiff hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

102.   California Business and Professions Code §17200 defines unfair competition to include, "unlawful, unfair or fraudulent business practices."

103.   Plaintiff and all proposed California Class Members are "persons" within the meaning of Business and Professions Code §17204, who have suffered injury in fact and have lost money or property as a result of Defendants' unfair competition.

104.   Defendants have been committing, and continues to commit, acts of unfair competition by engaging in the unlawful, unfair and fraudulent business practices and acts described in this Complaint, including, but not limited to:

(a)   violations of California Code Regulations, Title 8 § 11050, ¶ 7, 11, and 12;

(b)   violations of California Labor Code §§ 201-203

(c)   violations of California Labor Code §§ 221-223;

(d)   violations of California Labor Code § 226;

(e)   violations of California Labor Code § 510;

(f)   violations of California Labor Code §§ 226.7 and 512;

(g)   violations of California Labor Code §§ 1174;

(h)   violations of California Labor Code § 1194; and

(i)   violations of California Labor Code § 1198.

105.   As a result of its unlawful, unfair, and/or fraudulent business acts and practices, Defendants have reaped and continue to reap unfair benefits and illegal profits at the expense of Plaintiff and proposed California Class Members.  Defendants' unlawful, unfair, and/or fraudulent conduct has also enabled Defendants to gain an unfair competitive advantage over law-abiding employers and competitors.

106.   Business and Professions Code §17203 provides that the Court may restore to an aggrieved party any money or property acquired by means of the unlawful, unfair, and/or fraudulent business acts or practices.

107.    Plaintiff seeks a court order enjoining Defendants from the unlawful, unfair, and/or fraudulent activity alleged herein.

108.    Pursuant to Civil Code §3287(a), Plaintiff and other members of the California Class are entitled to recover pre-judgment interest on wages earned, but not paid.

109.    Plaintiff further seeks an order requiring an audit and accounting of the payroll records to determine the amount of restitution of all unpaid wages owed to herself and members of the proposed California Class, according to proof, as well as a determination of the amount of funds to be paid to current and former employees that can be identified and located pursuant to a court order and supervision.

110.    Plaintiff seeks restitution to herself and all others similarly situated of these amounts, including all earned and unpaid wages and attorneys' fees and costs pursuant to Cal. Code Civ. Proc. §1021.5.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the proposed FLSA Collective and California Class she seeks to represent in this action, requests the following relief:

a) An order certifying that the First Count of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the opt-in FLSA Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims;

b) An order certifying that the Second through Eighth Counts of this Complaint be maintained as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of Accountable traveling nurses employed in the state of California within the last four years and that notice of the pendency of this action be provided to members of the California Class;

c) An order designating Plaintiff as class representative for both the FLSA and state law claims and Plaintiff's attorneys as Counsel for both the FLSA Collective and the

California Class;

d) An order awarding Plaintiff, the FLSA Collective, and the California Class compensatory damages and statutory damages (including liquidated damages on the FLSA claim), including lost wages, earnings, and other employee benefits and all other sums of money owed to Plaintiff and members of the FLSA Collective and the California Class, together with interest on these amounts;

e) An order directing Accountable to identify, locate and restore to all current and former employees the restitution they are due for lost wages, earnings, and other employee benefits and all other sums of money, together with interest on these amounts;

f) preliminary, permanent and mandatory injunctive relief prohibiting Accountable, its officers, agents and all those acting in concert with it, from committing the violations of law herein alleged in the future;

g) A declaratory judgment that Accountable has violated the FLSA and California Labor Law and public policy as alleged herein;

h) That the Court find that Defendants have been in violation of applicable provisions of the California Labor Code and IWC Wage Order No. 5 by failing to pay each member of the proposed Class their statutorily mandated double time wages despite requiring and/or suffering and permitting them to work in excess of 12 hours per day;

i) That the Court find that Defendants have been in violation of applicable provisions of the California Labor Code and IWC Wage Order No. 5 by failing to provide Plaintiffs and members of the Class with meal periods that are truly off duty and otherwise in compliance with the Wage Order;

j) That the Court find that Defendants have been in violation of applicable provisions of the California Labor Code and IWC Wage Order No. 5 by failing to authorize and permit rest periods that are truly off duty and otherwise in compliance with the Wage Order, for Plaintiffs and members of the Class;

k)   That the Court find that Defendants have been unjustly enriched;

l)   That the Court find that Defendants have violated the recordkeeping provisions of California Labor Code §§ 1174 and 1174.5 as to Plaintiff and the Class;

m)   That the Court find that Defendants have been in violation of California Labor Code § 226 by failing to timely furnish Plaintiff and members of the Class with itemized statements accurately showing gross wages earned, net wages earned, total hours worked, and applicable hourly rates;

n)   That the Court find that Defendants have been in violation of California Labor Code §§201 and 202 and therefore owe waiting time penalties under California Labor Code §203 for willful failure to pay all compensation owed at the time of termination of employment to Plaintiff and other formerly employed members of the Class;

o)   That the Court find that Defendants have committed unfair and unlawful business practices, in violation of California Business and Professions Code §17200, *et seq.*, by their violations of the Common Law, Labor Code and Wage Orders as described above;

p)   That the Court order an accounting of the payroll records to determine what restitution is owed and to whom, pursuant to California Business and Professions Code §17203;

q)   An order imposing all statutory and/or civil penalties provided by law, including but not limited to, penalties under Labor Code §§ 203, 226(e), 558, and 2699 together with interest on these amounts;

r)   Pre- and post-judgment interest;

s)   An award of reasonable attorneys' fees as provided by the FLSA, California Labor Code §§ 226(e), 1194, and 2699; California Code of Civil Procedure § 1021.5; and/or other applicable law;

t)   All costs of suit; and

u)   Such other and further relief as this Court deems just and proper.

Dated:  October 15, 2018

Respectfully submitted,

SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP

By:  _____

NATHAN PILLER
Attorney for Plaintiff Sarah Reynosa-Juarez
and the Proposed Class.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff and the Class are entitled to a jury.

Dated:  October 15, 2018

Respectfully submitted,

SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP

By:  _____

NATHAN PILLER
Attorney for Plaintiff Sarah Reynosa-Juarez
and the Proposed Class.